C. N. Coby Cohen
ROSSI VUCINOVICH, P.C.
1000 Second Ave., Suite 1780
Seattle, WA 98104
Telephone:  (425) 646-8003
Facsimile: (425) 646-8004
ccohen@rvflegal.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| **BRUCE KREMERS**,<br><br>Plaintiff,<br><br>v.<br><br>**BNSF RAILWAY COMPANY,** a Delaware corporation,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Bruce Kremers ("Plaintiff" or "Mr. Kremers"), by and through his undersigned counsel, and for his cause of action against Defendant BNSF Railway Company ("Defendant" or "BNSF"), a Delaware corporation, states and alleges as follows:

## I.  PARTIES AND JURISDICTION

1. At all material times, Mr. Kremers was, and remains, a resident of the State of Montana.

2. At all material times, Defendant was and is a corporation duly organized and existing under the laws of the state of Delaware, and was operating a system of railroad tracks in the State of Montana and other states, and that said system included lines of track in the District of Montana (and in the Billings Division thereof), where this action is filed.

3. Defendant is a railroad (as defined in § 69-14-102 M.C.A.) that does business in the District of Montana (and in the Billings Division thereof).

4. At all times material herein, Defendant was an interstate carrier by rail and was engaged in interstate transportation and commerce; that Plaintiff was employed by Defendant as a conductor, and as such was working and engaged in interstate transportation and commerce at the times hereinafter set forth, and at such times was working in the furtherance of Defendant's interstate commerce, and in work which directly, closely, and substantially affected the general interstate commerce carried on by said Defendant as a railroad common carrier of freight for hire.

5. The jurisdiction of this Court is based upon Title 45 U.S.C. § 51 *et seq.*, commonly known as the Federal Employers' Liability Act (FELA), and this action is timely commenced in a proper venue within the meaning of 45 U.S.C. § 56 and 28 U.S.C. § 1391(b)(2).

## II.  FELA NEGLIGENCE

6. Mr. Kremers realleges and incorporates by reference the allegations contained in paragraphs 1 through 5 of this Complaint as though fully set forth herein.

7. On August 24, 2020, Mr. Kremers was working as a conductor in support of Defendant's rail lines.

8. On that date, Mr. Kremers, in the course and scope of his duties for Defendant, was assigned to work, and performed work, on the Colstrip subdivision between or around mileposts 17 to 20.

9. That area of Defendant's tracks was known by Defendant to pose dangers to pedestrians due to sloping ballast and the lack of a properly regulated ballast shoulder.

10. In particular, BNSF's own notices included a "Special Conditions" notice concerning this location that indicated that "[t]rain crews will not tie down loaded coal trains between Colstrip and East Nichols Wye due to the grade and

walking conditions[.]" Defendant BNSF did not apply the same notice to trains other than loaded coal trains, despite the same conditions existing at such location.

11. BNSF had directed Mr. Kremers to release tied brakes on cars for a train stopped at that location, compelling him to walk along the sloping ballast known by BNSF to be a dangerous condition.

12. BNSF also denied Mr. Kremers any assistance in the work, despite specific requests by Mr. Kremers for such assistance.

13. Specifically, Mr. Kremers had requested the assistance of a brakeman for the assigned work, as the assignment of a brakeman to work with a conductor had been typical for that assigned work.

14. The assignment of a brakeman to work with a conductor was also consistent with, and required by, the applicable 1993 crew consist agreement pertaining to such work.

15. Mr. Kremers noted in his request for assistance from a brakeman that "the job is considerably greater without a brakeman and should not be called if it cannot be properly staffed."

16. Mr. Kremers also sent another request noting his frustration that his request for a brakeman was denied, and noting "it is a dangerous setting and the job is considerably more involved without a brakeman." He also noted again that a brakeman had been provided to others in similar circumstances.

17.     BNSF also was aware that the conditions at that location posed a danger to the safety of individuals working there, as at least one other conductor had previously been injured at that location performing substantially similar work to that assigned to Mr. Kremers on August 24, 2020.

18.     Mr. Kremers also called the Trainmasters to reiterate the same messages that he sent them in writing as summarized above.

19.     Mr. Kremers was nonetheless still denied additional assistance with the assigned task, and BNSF compelled him to pursue the task on his own.

20.     Notwithstanding the lack of assistance of a brakeman, Mr. Kremers proceeded to perform his assigned work.  As he did so, however, he suffered an injury.

21.     Immediately after releasing a brake on a vehicle car (a rail car designed to hold automobiles), the sloped ballast beneath Mr. Kremers shifted and resulted in him losing his footing and balance and falling, twisting and injuring his right knee and injuring his left shoulder that he had used to catch himself as he fell, as well as suffering other related injuries.

22.     Mr. Kremer's injuries and the resulting damages incurred as a result of the incident described herein were caused, in whole or in part, by the negligence of Defendant BNSF, its agents, employees and officers, in violation of 45 U.S.C. §§ 51-60, *et seq.*, including, but not limited to:

a. Failing to provide Mr. Kremers with a reasonably safe place in which to work as required by law;

b. Directing Mr. Kremers to pursue work in conditions known by Defendant to pose an unreasonable risk to his health and safety;

c. Failing to properly warn Mr. Kremers of the dangers which confronted him in his performance of his duties and of the unreasonably dangerous conditions concerning the sloped ballast, lack of a properly regulated ballast shoulder, unsafe walking conditions, and grade;

d. Failing to properly train its employees, agents, and representatives to perform their duties competently and without negligence, including, in particular:

   i. the failure to adequately train the employees, agents, and/or representatives who were directly responsible for failing to ensure safe ballast conditions free of a lack of a properly regulated shoulder and severe sloping ballast;

   ii. the failure to adequately train the employees, agents, and/or representatives who were directly responsible for stopping the train at the Colstrip subdivision location known to pose a risk to pedestrians; and

   iii. the failure to adequately train the employees, agents, and/or representatives who were directly responsible for assignment of employees to perform work who elected not to provide a brakeman to assist in the work;

   each of which independently caused or contributed to Mr. Kremers' injuries;

e. Failing to adopt and enforce practices and procedures designed to avoid the very incident, or type of incident, that occurred and caused Mr. Kremers' injuries, including adoption of practices or procedures to ensure that no trains were tied down, and no walking work was to be performed by employees, in the known unsafe location where Mr. Kremers was injured;

    f.      Failing and refusing to provide adequate and/or required personnel to perform the assigned work safely, with knowledge that performance of the work without assistance posed additional safety risks to Mr. Kremers; and,

    g.      other acts of negligence to be proven at trial in this matter.

23.     Mr. Kremers was not cited by BNSF with violation of any Rule, policy or procedure of BNSF in connection with his injuries.

24.     Mr. Kremers was also not investigated by BNSF for any perceived potential violation of any Rule, policy, or procedure of BNSF in connection with his injuries.

25.     Due, in whole or in part, to Defendant's negligence under the FELA, Mr. Kremers sustained severe, potentially permanent and disabling injuries including, but not limited to, injuries to his right knee and to his left shoulder, including the bones, muscles, tendons, and other tissues comprising each, as well as injuries to his psyche, including from the trauma of the incident and injuries sustained therein; and Mr. Kremers has suffered in the past, and will continue to suffer into the future, pain, anguish, and loss of enjoyment of life.

26.     In an effort to treat, heal, and relieve suffering from his injuries, Plaintiff has undergone painful and arduous treatment, including multiple surgeries, and has spent, and will continue to spend, monies for medical and related care and treatment in amounts to be proven at trial.

27. That as a direct result, in whole or in part, of Defendant's negligence in violation of the FELA, Plaintiff has lost wages in the past, will continue to lose wages in the future, and has sustained a permanent diminution of his earning capacity, at least to some degree, and a loss of fringe benefits, each in amounts to be proven by the evidence at the trial of this matter.

### III. REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against the above-named Defendant for special and general damages in an amount established by the evidence, together with all costs and disbursements, and other relief the court may deem appropriate.

### IV. JURY DEMAND

Plaintiff demands a trial by jury on all issues raised herein.

Dated this 15th day of March 2021.

**ROSSI VUCINOVICH, P.C.**

 /s/ C. N. Coby Cohen
C. N. Coby Cohen, MSBN 56597356
*Attorney for Plaintiff*